The Hon. Isham Talbot presented the following petition for a re-hearing:
Impelled by a strong sense of that duty which he owes his clients, and his own firm convictions in relation to their rights involved in the decision pronounced herein, as well as of their utter ruin, which he believes the inevitable result of the decree pronounced against them by your Honors, their counsel, the undersigned, feels himself impelled to solicit, with great respect, a re-hearing of the case. But as not his feelings or opinions, but the reasons he can urge in favor of his applica *314 tion, can give him just claims to success, he will proceed to detail such as have occurred to him.
The locative calls in the entry of Holt Richardson, on the true construction of which the controversy essentially turns, are few and simple, and susceptible of but brief discussion. His entry of 1,000 acres on a military warrant, describes the land intended to be appropriated, as lying “ in the fork of the first fork of Licking, to run up each fork for quantity.” To ascertain the meaning of these expressions, it is essential that they should be considered in connexion with the proofs in the cause; from which, any apparent ambiguity in the meaning of the expression, fork, repeated three times in this entry, as considered in the abstract, and independent of the proofs, it is conceived, will entirely vanish.
The testimony explanatory of the true meaning of the expressions used in this entry, as before alluded to, furnishes at once a key for the easy solution of the difficulties which might occur in considering them in the abstract, and without recurring to this source of explanation. The expressions, to lie “in the fork,” with those which follow, “ to run up each fork for quantity,” are susceptible of no doubt, and in regard to which there can be no difference of opinion. The expression, fork, here evidently indicates the point formed by the junction of two streams. The words, “ in the fork,” and “ to run up each fork for quantity,” indicate as clearly as language can express, not any where, but here, the land appropriated is to lie, and need no further comment.
There remains, then, no ground for contest, in relation to the validity of this entry, but that which results from the expressions, “ the first fork of Licking;” and if the supposed difficulty arising from this call can be surmounted, no difficulty can occur in pronouncing the entry a valid one.
The court, in the opinion pronounced herein, seem to place the stress of their argument on the ambiguity of the expressions here alluded to; the expression, fork, as the court apprehends it, being equally applicable to one of two branches or prongs of a main stream, as to that point formed by the union of such branches or prongs of the principal stream. In the common parlance of the country, this may be so, and yet, as *315 your petitioners respectfully contend, no argument be furnished thereby, detrimental to their claim; because this expression, as used in the entry where it first occurs, “ in the fork” is shown to have a clear, definite and unquestionable meaning in relation to the use of this word; that is, to indicate the point of union of two streams, and not to designate one of those streams. Upon what principle of construction, or in conformity with what rule of grammar, is it that this same expression, immediately recurring, with only three monosyllables intervening, shall be understood in a different sense, and indicating an entirely different object, that is, the South Fork of Licking, and not the point of junction, so clearly and unequivocally indicated by the expression where it first occurs?
Such construction, so far from being required by the rules of construction adopted by courts of justice, or those of grammar, as these rules are understood by the counsel, is repelled and forbid by both. Technical words and phrases, when used in deeds and other instruments, are to receive always an uniform construction, although by such construction the intention of the party using them is manifestly violated ; and expressions employed in an instrument like the present, by the unlearned, and to which, when first introduced, the party has affixed an unequivocal meaning, almost immediately recurring, as in the present case, should, upon every principle of common sense and fair construction, as it would seem to the counsel, be understood as conveying the same idea, or having relation to the same object.
If these observations, abstracted from the testimony in the present case, are entitled to consideration, what additional force must they not acquire, when considered in connexion with the evidence in the case? This testimony, all concurring, almost with entire unanimity, to give to the expressions in this entry the meaning which, reasoning upon the principles of construction and the established rules of grammar, I have assigned them. That this parol evidence of witnesses is entitled to much weight in cases of doubtful construction, (if such were even the case here,) the authorities are abundant, and the reasons on which such decisions are bottomed, convincing and satisfactory.
*316 Such instruments as the present being designed in general for the inspection and use of the unlearned hunter and hardy adventurer, when they are understood by persons of this class, with almost entire uniformity, to convey a particular idea, and to lead to and appropriate a particular spot of land, is it not unjust, as it is in contravention of the manifest intention of the party, by ingenious or refined speculations to contravene his intions, and by nice criticisms and artificial reasonings to condemn a claim of which those for whose benefit the location was made, entertained no serious doubts?
To ascertain whether the supposed ambiguity in relation to the ideas conveyed by the expressions, "first fork of Licking,” and whether these words should be understood to refer to the point of junction where the entry has been surveyed, or to the stream called the South Fork, it would seem that the difficulty might be solved at once, by the inquiry whether the South Fork of Licking would be understood to be intended and referred to; or, in other words, whether any reasonable number of persons would have been misled, by going to the junction of Stoner and Hinkston, in search of these calls? A candid review of the evidence, with a view to the solution of this question, it is believed, would solve all doubt; for the counsel who presents this petition is firmly persuaded, that neither the testimony in the cause, nor even a full examination of all those who were conversant with this part of the country, would furnish evidence that any hunter, explorer of the country, or other human being, ever called or knew this, the South Fork of Licking, by the name of the first fork of Licking; and yet it is on the supposition that it might have been so called, that the ambiguity which has been decided fatal to this entry, is made to exist. Surely, then, it deserves serious re-consideration, whether an entry which, to the mind of the unlettered hunter and locator, for whom, and for whose benefit and information, it was directed by law to be made, conveyed, with sufficient precision, the requisite information, and pointed, with sufficient certainty, to the first fork or main fork of Licking, should, by a train of artificial reasoning, be made, at the present day, to convey the idea of the South prong or fork of Licking, by which name such South fork was never
*317 In another point of view, (and indeed in any other view but the most rigorous,) it would seem to the counsel the entry ought to be sustained. The expressions, “fork of the,” considered as tautologous, leave no ground for criticism the most rigorous, to assail the entry. It would then read, “ to lie in the first fork of Licking, extending up each for quantity.” What forbids this? Is it the rule, so early introduced into our system, and, until recently, applied with so much uniformity and with such general satisfaction to the bar and to the country? Was not this rule of grammar, as well as of law, that in construing instruments tautologous expressions may and ought to be rejected, applied, and happily and properly applied, in the case quoted and commented on in the opinion in the present case, that of Halbert, &c.’s entry, in which, not only similar expressions, but almost the identical expressions above alluded to, were rejected as tautologous in that entry; the retention of which expressions rendered that entry entirely impracticable to be complied with, as well as absurd and nonsensical? The retention of them in the present case, is only the source of ambiguity.
But the court, in the opinion pronounced in this case, have not only pronounced sentence of condemnation on the entry in question, but have decided that the misrecital of the date of the entry in the certificate of survey on which the patent has issued to the complainants, is fatal to their claim. This opinion, and the principle introduced thereby into our system of jurisprudence in relation to adversary rights to land, with every respect which it is the duty as well as the disposition of the counsel to bestow on decisions of this court, are, it is conceived, as novel as pernicious and destructive to the just rights of parties litigant. Upon general principles of justice, policy and propriety, can or ought the acts of a ministerial officer, a public agent of the government, appointed to do an act essential to the perfection of my inchoate right, granted for a valuable and ample consideration, by committing a mistake in making out a certificate of survey, over which the owner has no power or control, to forfeit and destroy the right of the owner, who is guilty of no fault or neglect, of commission or omission, whatever? And could the legislature, in framing the regulations for the government of surveyors in making out their certificates of survey, have intended *318 or supposed that mistakes of these officers, the most entirely innocent, should be attended with such fatal consequences to an owner entirely free himself from fault, neglect, or even of mistake? Surely not. Such injustice cannot be fairly predicated of a legislature, by this and other similar provisions compensating the soldiers of her country for their hazards, their treasure, and their blood, expended in its defence.
The requisitions of the section in question, in relation to plats and certificates of survey, seem to be clearly and evidently directory only, and not of imperious or necessary obligation, so as to render an absence or mistake of any one of them fatal to the certificate itself, as well as destructive of the whole claim. For if the latter had been intended; if, for the unintentional, and, in some degree, an unavoidable fault of another, a mere mistake of a single word on the part of a surveyor, the legislature had intended to forfeit and destroy the claim and title of the owner of the entry, would they not have said so? Would they not have given an intimation in some part of their enaction, that such was their intention? Is not, then, a decree which declares an entry or claim forfeited, for an omission to recite, or a mistaken recital of any one of those things required to be stated, carrying the doctrine of forfeiture further than a fair interpretation of this act, on the benign principle which is applicable to forfeitures, will warrant?
The opinion delivered in this case truly recites that the act requires the surveyor to state in the certificate of survey, “ the warrant and other rights” on which such survey is founded. The question first to be settled, is, what did the legislature intend by the expressions, and other rights, contained in this provision? Did they mean some other original right or title, on which the claim was or might have been founded; such as an order in council, entry on the council books, or proclamation rights, all recognized as valid foundations of legitimate claims, provided for by the land law of 1779? Or did they mean that the surveyor should state, not only the warrant, the sole foundation of the right in the present case, and the entry founded on such warrant, when the entry is only one progressive step, taken by the owner of such warrant, towards the consummation of such right? Surely not the latter; because the entry is not the right, but one step towards its perfection, and be *319 cause the expressions, “ and other rights,” may be fully satisfied, without a recital of the entry, as shown above. But admitting, for argument’s sake, that the entry must be recited, because the law requires a statement of the warrant and other rights, is it a just or legitimate conclusion, that the date of such entry should also be recited? And is an omission to recite such date, a fatal defect in such certificate of survey? Not unless we add to, or interpolate such provision in the act, for the purpose of working a forfeiture. And if the omission of the date of such entry altogether, is not fatal, how can it be contended that a variance of a single day, or any other mistake in the date of such entry, can be held fatal to the claim? Nor is it perceived by the undersigned, how the existence of another entry, in a different section of country, or different neighborhood, can vary the question. All that the law, by a sound construction of its various provisions, seems to require, is, that the party claiming under such entry; and all that the decisions of this court seem, heretofore, ever to have required, is, a good and valid entry, a survey made in conformity with such entry, and that carried into final and complete title by grant.
In conformity with this train of reasoning, has been the practice of surveyors in every period of the history of the land titles in the country, sanctioned by the decisions of this, as well as the other tribunals of the country. As regards the practice of surveyors, it is believed, the certificates of survey greatly varied in this particular. In some cases, they recited the nature of the warrant, whether military, treasury or pre-emption warrant; sometimes adding, sometimes omitting the number of such warrant; sometimes omitting the warrant altogether, and reciting the entry only, with its date.
And it is asked with confidence, in which case it has ever been decided that any of these modes of recital, various as they are, have been so erroneous and defective, as to be fatal to the claim? It is believed that no such case can be found. If it is essential and indispensable, as the court assume in the opinion in the present case, to recite, not only the warrant, which is the right, but the entry and its date, what would be the fate of such surveys as recite the entry only, without the war *320 rant, and there are believed to be thousands such? And must not such omission in all cases be fatal?
I. TALBOT, Attorney for Appellees.
All which is respectfully submitted, by
But, on the 10th day of December 1821, the petition was overruled.